THE HONORABLE TANA LIN

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OPPENHEIMER & CO. INC.,

                Plaintiff,

    v.

STEVEN MITCHELL, DORI MITCHELL,
JEROME HOPPER, and LORI HOPPER,

                Defendants.

Case No. 2:23-cv-00067-TL

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR:
February 17, 2023

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION
Case No. 2:23-cv-00067-TL

Plaintiff Oppenheimer & Co. Inc. ("Oppenheimer") respectfully moves this Court for a preliminary injunction prohibiting Defendants Steven Mitchell, Dori Mitchell, Jerome Hopper, and Lori Hopper (collectively, "Defendants") from arbitrating against Oppenheimer any and all claims they have or could have brought in the pending Financial Industry Regulatory Authority ("FINRA") arbitration styled *Mitchell v. Oppenheimer & Co. Inc.*, FINRA Arb. No. 21-02818 (the "FINRA Arbitration"),[1] which is scheduled to proceed to final evidentiary hearing on March 13, 2023.   Oppenheimer is not required to arbitrate any claims with Defendants because (1) Oppenheimer has no written agreement to arbitrate claims with Defendants; and (2) Defendants are not and never were customers of Oppenheimer.  Accordingly, Oppenheimer seeks injunctive relief so that it is not forced to arbitrate claims it is not required to arbitrate.[2]

## **PRELIMINARY STATEMENT**

Unsurprisingly, FINRA's Code of Arbitration Procedure for *Customer* Disputes only requires a FINRA member firm, like Oppenheimer, to arbitrate disputes between the FINRA member and its customers.  Defendants are not Oppenheimer customers.  They have never been Oppenheimer customers.  They have never held an account with Oppenheimer.  They never signed an agreement of any sort with Oppenheimer—not an account opening agreement or any other agreement, let alone an agreement to arbitrate.  They did not purchase a security or any other brokerage or investment service through Oppenheimer.  They never received any account statements from Oppenheimer, having never been Oppenheimer customers.   In short, Defendants and Oppenheimer have no preexisting agreements to arbitrate, and Oppenheimer has not consented to arbitration of the claims in the FINRA Arbitration.  Accordingly, the claims Defendants have asserted against Oppenheimer in the FINRA Arbitration are not arbitrable.

---

[1] Defendants are four of five claimants named in the FINRA arbitration.  *See* Declaration of William E. Mahoney, Jr., Esq. filed in support hereof ("Mahoney Decl.") at ¶ 3 & Exhibit A (hereinafter "Statement of Claim" or "SOC").

[2] Prior to filing this action and this Motion, counsel for Oppenheimer conferred with counsel for Defendants in the underlying FINRA Arbitration regarding Defendants' willingness to withdraw their claims in the FINRA Arbitration. On behalf of Defendants, their counsel declined to withdraw their claims in the FINRA Arbitration.  *See* Mahoney Decl. ¶ 7.

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 1
Case No. 2:23-cv-00067-TL

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

A preliminary injunction is appropriate here, where Oppenheimer has not agreed to arbitrate Defendants' claims. Indeed, numerous courts have granted preliminary injunctions to forestall arbitration proceedings where the parties had not agreed to arbitrate. *See infra* at 14 (citing cases). Absent a preliminary injunction, Oppenheimer will suffer the irreparable harm of spending significant time and resources on an arbitration proceeding that ultimately will be a waste because any arbitration award would not be enforceable. On the other hand, if preliminary relief is granted, Defendants will suffer, at worst, a short delay in the arbitration proceeding during the pendency of this action. Indeed, injunctive relief may ultimately benefit Defendants because they may also avoid wasting time and resources on an arbitration that will not be enforceable. It also is in the public's interest to avoid compelling arbitration where a party, here Oppenheimer, has not agreed to arbitrate.

It is a bedrock principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Oppenheimer respectfully asks the Court to honor this principle and issue an order preliminarily enjoining the FINRA Arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants Are Not Oppenheimer Customers and Have No Agreement To Arbitrate With Oppenheimer.

Defendants Steven and Dori Mitchell and Jerome and Lori Hopper are not Oppenheimer customers. *See* Alvarez Decl. ¶¶ 3–11. They have never been Oppenheimer customers. *See id.* They have never held an account with Oppenheimer. *See id.* They never signed an agreement of any sort with Oppenheimer—not an account opening agreement or any other agreement, let alone an agreement to arbitrate. *See id.* According to its records, Oppenheimer has never sold any security or service to Steven Mitchell, Dori Mitchell, Jerome Hopper, or Lori Hopper. *See id.* Because Defendants were never Oppenheimer customers, Oppenheimer never addressed account statements to them. *See id.* Indeed, as discussed below, the Mitchells do not even allege that they ever spoke

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 2
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

with anyone at Oppenheimer, much less that they received any investment advice from Oppenheimer. *See infra* at 4. And, the Hoppers only vaguely allege that John Woods (an Oppenheimer employee at the time) and Michael Mooney (not associated with Oppenheimer) "pitched" them on the investment at issue, but do not allege that they purchased any security from Oppenheimer or had any other connection with Oppenheimer. *See infra* at 4–5. As discussed below, *see infra* at § I.B.2.ii, such vague and attenuated allegations are insufficient to make one an Oppenheimer "customer."

**B. Defendants Initiated an Arbitration Against Oppenheimer.**

On or about November 10, 2021, Defendants filed a Statement of Claim with FINRA Dispute Resolution Services styled *Mitchell v. Oppenheimer & Co. Inc.*, FINRA Arb. No. 21-02818. Mahoney Decl. ¶ 3.

**Steven and Dori Mitchell.** In the Statement of Claim, the Mitchells assert that, in 2016, they invested "over $1.6 million" in an entity called Horizon Private Equity III LLC ("Horizon"), which, they allege, was a Ponzi scheme. SOC at 2–3. They allege their entire investment was lost as a result of this scheme. *Id.* at 3. They further allege that they invested in Horizon based on representations made by Michael Mooney who allegedly was an "agent" of Oppenheimer employee John Woods. *Id.* at 2.

**Jerome and Lori Hopper.** The Hoppers allege that Mooney and Woods "pitched the Hoppers in 2016 on an investment in Horizon." *Id.* at 3. Jerome Hopper alleges that, apparently in a separate communication not including his wife, an unidentified person "promised" him "that the Horizon investment was virtually risk-free." *Id.* The Hoppers allege that they invested "approximately $600,000 in Horizon" "due to its promises of a guaranteed income stream." *Id.* at 4.

As noted above, Defendants are not and were not customers of Oppenheimer. Defendants do not allege that they ever opened Oppenheimer accounts. They do not allege that they purchased interests in Horizon through Oppenheimer. They do not allege that they purchased any service or security from Oppenheimer, or that they sent any funds to Oppenheimer. Aside from the Hoppers'

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 3
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

vague reference to being "pitched" by Woods, Defendants do not allege that they communicated with anyone at Oppenheimer in connection with the Horizon investments on which they base their claims. *See id.* at 2–4. And, while Defendants allege that Horizon was "marketed" by Woods (who was an Oppenheimer employee until December 2016) and certain other former Oppenheimer employees whom Woods "recruited" to participate in the Horizon scheme, *see id.* at 1, Mooney is the only such "recruit" with whom Defendants allege they communicated, *see id.* at 2–4. They concede, however, that, when they allegedly communicated with Mooney in 2016, Mooney had not worked at Oppenheimer since 2010, *see id.* at 1, a fact supported by the Oppenheimer's records and the public record. *See* Alvarez Decl. ¶¶ 12–13; Mahoney Decl. ¶ 4 & Exhibit B (FINRA's "BrokerCheck Report" for Michael Jeremiah Mooney (CRD# 4037101)).[3]

**C. Absent Injunctive Relief, Arbitration Proceedings Will Continue and a Final Evidentiary Hearing Will Take Place in 2023, Causing Oppenheimer to Suffer Irreparable Harm.**

Oppenheimer filed its answer to Defendants' Statement of Claim in the FINRA Arbitration on January 10, 2022. The discovery period has commenced and the final evidentiary hearing is scheduled for at least nine days in-person in Seattle, Washington, beginning on March 21, 2023. Mahoney Decl. ¶ 6. Absent a preliminary injunction, arbitration proceedings will continue and the final evidentiary hearing will take place. *See id.* In such a circumstance, Oppenheimer will be forced to spend time and resources, including attorney's and expert fees, that it will be unable to recover. *See infra* at § I.C.

---

[3] This Court may take judicial notice of information posted to FINRA's website. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information posted to school districts' websites); *Sullivan v. SII Invs., Inc.*, 2018 WL 983945, at *2 n.6 (N.D. Cal. Feb. 20, 2018) (taking judicial notice of information posted on FINRA's website).

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 4
Case No. 2:23-cv-00067-TL

## ARGUMENT

### I. A Preliminary Injunction Enjoining the FINRA Arbitration Is Warranted.

#### A. The Preliminary Injunction Standard.

To obtain a preliminary injunction, the movant must demonstrate: "that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

A preliminary injunction is appropriate here because: (1) Oppenheimer is likely to succeed on the merits of its claim that it is not required to arbitrate Defendants' claims in the FINRA Arbitration; (2) Oppenheimer would suffer irreparable harm by expending unrecoverable resources if it were forced to arbitrate Defendants' claims in the FINRA Arbitration; (3) the equities weigh in Oppenheimer's favor; and (4) protecting Oppenheimer's access to the courthouse where it has not agreed to arbitrate claims serves the public interest.

#### B. Oppenheimer Is Likely to Succeed in Demonstrating That It Is Not Required to Arbitrate Defendants' Claims in the FINRA Arbitration.

##### 1. A Party Cannot Be Forced to Arbitrate a Dispute Unless It Has Agreed To Do So.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648; *see also Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (denying appeal of order staying arbitration where the parties had agreed to apply state law which allowed for stay, and noting that arbitration is "a matter of consent, not coercion."). The question of whether parties have agreed to arbitrate is an issue for the court, not an arbitration panel. *AT&T*, 475 U.S. at 649 (vacating order deferring question of arbitrability to arbitrator and holding that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

is to be decided by the court, not the arbitrator."); *Goldman*, 747 F.3d at 739 (holding that the court "must make the call" as to whether FINRA Rule 12200 applies to particular disputes); *see also UBS Fin. Servs., Inc. v. Zimmerman*, 2016 WL 3546537, at *4 (E.D.N.C. June 21, 2016) (granting preliminary injunction against FINRA arbitration brought by non-customer and holding that question of whether FINRA claimant and FINRA member agreed to arbitrate is a question for the court) (citing *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013)). Where the question is **whether** an arbitration agreement exists (as opposed to the **scope** of an arbitration agreement), there is no "presumption in favor of arbitration." *Goldman*, 747 F.3d at 742.

**2. FINRA Rule 12200 Requires Arbitration Only Where There is a Written Agreement or Arbitration is Requested by a "Customer."**

As a general matter, FINRA member firms like Oppenheimer have agreed to arbitrate certain types of disputes with their customers. More specifically, FINRA Rule 12200 governs arbitrability of claims against FINRA member firms. It states:

> Parties must arbitrate a dispute under the Code if:
>
> - Arbitration under the Code is either:
>   (1) Required by a written agreement, or
>   (2) Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Because Defendants cannot establish either (a) that they and Oppenheimer entered into written agreements to arbitrate or (b) that they were Oppenheimer customers, they fail to satisfy the first prong of Rule 12200.[4] For these reasons, Oppenheimer is likely to succeed in

---

[4] Because Defendants have failed even to satisfy Rule 12200's first prong, the Court need not reach the second or third prongs. Defendants would fail the second prong for the same reasons as the first—they are not Oppenheimer customers, so their disputes are not disputes "between a customer and a member." Oppenheimer also does not concede that Defendants' disputes "arise[] in connection with the business activities of [Oppenheimer]," but the Court need not reach that question to resolve this Motion.

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 6
Case No. 2:23-cv-00067-TL

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

demonstrating that Defendants cannot compel Oppenheimer to participate in the FINRA Arbitration.

### i.   The Parties Have No Written Agreement to Arbitrate.

Defendants' Statement of Claim does not identify ***any*** agreement between any of the Defendants and Oppenheimer, let alone a written agreement to arbitrate.  There is no such agreement.  *See* Alvarez Decl. ¶¶ 3–11.  And, though discovery in the FINRA Arbitration has commenced, Defendants have not produced any written agreement between either Defendant and Oppenheimer.  *See* Mahoney Decl. ¶ 5.

### ii.   Defendants Have Never Been Oppenheimer Customers.

In the absence of a written agreement to arbitrate, a FINRA member may only be compelled "to arbitrate disputes arising out of their business activities at the request of a 'customer.'" *Goldman*, 747 F.3d at 739; *see also Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 564 (4th Cir. 2013) (same).  Thus, the central question is whether Defendants are Oppenheimer's "customers."  *See Goldman*, 747 F.3d at 739.  The answer is "no."

The Ninth Circuit has joined other Circuits in defining "customer" under FINRA Rule 12200 as "a non-broker and non-dealer who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities." *Goldman*, 747 F.3d at 741; *see also Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014) (affirming injunction against FINRA arbitration brought by non-customer and holding that "customer" is one who "purchases a good or service from a FINRA member"); *Silverman*, 706 F.3d at 566 (affirming injunction against FINRA arbitration brought by non-customer and defining "customer" as "not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities, namely, the activities of investment banking and the securities business."); *Berthel Fisher & Co. Fin. Servs. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012) (affirming order enjoining FINRA arbitration against broker because claimants were not

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 7
Case No. 2:23-cv-00067-TL

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

"customers" where they were not "involved in a business relationship with [a FINRA] member that is related directly to investment or brokerage services").

But "[n]ot just any purchase of commodities or services will do"—only purchases "establish[ing] a 'direct' relationship with the FINRA member" suffice. *Zimmerman*, 2016 WL 3546537, at \*5; *see also COR Clearing, LLC v. LoBue*, 2016 WL 9088704, at \*3 (C.D. Cal. June 16, 2016) (preliminarily enjoining FINRA arbitration where claimant failed to allege that "she purchased [the relevant security] from [the FINRA member firm]"). "[O]ne who merely receives 'financial advice,' without purchasing directly an investment or brokerage related service, [] is not a customer." *Zimmerman*, 2016 WL 3546537, at \*5; *NYLIFE Sec., LLC v. Duhame*, 2020 WL 7075599, at \*3 (N.D. Cal. Dec. 3, 2020) (preliminarily enjoining FINRA arbitration by claimant who made investment in business based on recommendation of NYLIFE's associated person). Indeed, even owners of accounts at a FINRA member firm are not "customers" unless they purchase the security in dispute through their account. *See, e.g.*, *COR Clearing, LLC v. Ashira Consulting, LLC*, 2016 WL 7638177, at \*3–4 (C.D. Cal. Jan. 13, 2016) (preliminarily enjoining FINRA arbitration brought by claimant who held account with FINRA member firm, but who "did not engage in any type of activity in her COR Clearing account").

Applying this case law, no Defendant was an Oppenheimer "customer." Defendants do not allege that they ever had accounts with Oppenheimer, and Oppenheimer has not identified any such accounts. *See* Alvarez Decl. ¶¶ 3–11. Defendants also do not allege that they purchased any securities or services from Oppenheimer, and Oppenheimer has not identified any such purchases. *See id.* The Mitchells and the Hoppers claim that they invested in Horizon in 2016 based on the representations of **Michael Mooney**, who was not associated with Oppenheimer after 2010. *See supra* at 4–5. And, while the Hoppers vaguely allege that John Woods *and* Michael Mooney "pitched" them on the Horizon investment, they do not allege that they purchased any security from Oppenheimer or had any other connection with Oppenheimer. *See id.* Ultimately, Defendants alleged connection with Oppenheimer is that Woods allegedly was the mastermind behind the

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 8
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Ponzi scheme in which they invested and he was an Oppenheimer employee. *See* SOC at 1. Courts, including courts in this Circuit, have held that such an attenuated connection to a FINRA member firm does not qualify one as the firm's "customer."

The Fourth Circuit's *Raymond James* decision is instructive. 709 F.3d 382. There, the claimants had invested in a company called Inofin, which turned out to be a Ponzi scheme. *Id.* at 384. Inofin's president had recruited certain individuals to solicit investment in Inofin, including persons named Affeldt and Keough. *Id.* at 383–84. Keough was an employee and associated person of Morgan Stanley and, later, Raymond James ("RJ"), a FINRA member. *Id.* at 384. Affeldt was Keough's friend and not employed by RJ. *Id.* To avoid detection by his employers, Keough made arrangements for his wife to receive the fees for any Inofin investment either he or Affeldt solicited. *Id.* The claimants alleged that they communicated with Affeldt, and that he solicited their investments in Inofin. *Id.*

Claimants initiated an arbitration against RJ, which moved to enjoin the arbitration on the grounds that the claimants were not RJ customers. Claimants argued that "they [we]re customers of [RJ] because they purchased Inofin securities on the advice of Affeldt, a personal friend and business acquaintance of [RJ] registered representative Keough." *Id.* at 386. Claimants "emphasize[d] that Keough received commissions from Inofin for Affeldt's sales to [Claimants], suggesting that Affeldt was acting as Keough's agent in the transactions" and that "[t]his agency relationship . . . [was] enough to make [Claimants] customers of [RJ] because they are customers of an agent of an [RJ] representative." *Id.*

The Fourth Circuit rejected Claimants' arguments. Applying the well settled definition of "customer," the court held that Claimants were "not [RJ] customers because they did not purchase any 'commodities or services' from [RJ] or Keough in the course of the firm's business activities." *Id.* at 386–87. The court reached this conclusion because, among other things, Claimants had no accounts with RJ, there was "no evidence of any contractual relationship between [Claimants] and [RJ] regarding the Inofin transactions," and there was no "evidence that [Claimants] ever tendered

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 9
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

any funds to [RJ] in connection with those transactions." *Id.* The court was not persuaded by Claimants' arguments that they should be considered "customers" either because they were solicited by Affeldt, who they alleged was Keough's agent, or because Keough received commissions on their Inofin investments. *Id.* The court held that, where Affeldt solicited Claimants' investment without actual or apparent authority from RJ, Claimants could not be considered RJ's customers. *Id.* The court also declined to address the merits of RJ's alleged failure to supervise Keough because, the court stated, "[a]ny question as to whether [RJ] failed to adequately supervise Keough and it thus potentially liable for his arguably unauthorized activities goes to the merits of [claimants'] claims, not to the arbitrability of those claims." *Id.* at 387 n.2. The Fourth Circuit concluded that the claimants were "not customers of [RJ]" and, accordingly, affirmed the district court's injunction against the underlying FINRA arbitration. *Id.* at 388.

*Raymond James* stands for the proposition that, unless investors "purchase[] any service or commodity from [a FINRA member] during the course of its business activities," they are not "customers," even if they make their investment based on the advice of a very close associate of a FINRA member's associated person, and even if the associated person receives compensation for the investment. *Id.*

Other courts, including courts in this Circuit, agree that "customer" status requires the purchase of securities or services from the member firm. *See, e.g.*, *Principal Sec., Inc. v. Agarwal*, 23 F.4th 1080, 1085 (8th Cir. 2022) (affirming order enjoining FINRA arbitration concerning claims for failure to supervise outside business activities of firm's associated person where associated person solicited investment from claimant in connection with entity in which associated person was large shareholder); *NYLIFE*, 2020 WL 7075599, at *3 (preliminarily enjoining FINRA arbitration by claimant who made investment in business, not through an NYLIFE account, based on recommendation of NYLIFE's associated person); *Centaurus Fin., Inc. v. Ausloos*, 2019 WL 2027271, at *5 (E.D. Wis. May 8, 2019) (enjoining arbitration, explaining that it "cannot be correct" that simply having a "business relationship" with a FINRA member's associated person

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 10
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

"makes the person a customer of the FINRA member."); *LoBue*, 2016 WL 9088704, at *3 (preliminarily enjoining FINRA arbitration where claimant failed to allege that "she purchased [the relevant security] from [the FINRA member firm]"); *Ashira Consulting, LLC*, 2016 WL 7638177, at *3–4 (preliminarily enjoining FINRA arbitration brought by claimant who held account with FINRA member firm, but who "did not engage in any type of activity in her COR Clearing account"); *Berthel Fisher & Co. Fin. Servs., Inc. v. Frandino*, 2013 WL 2036655, at *2 (D. Ariz. May 14, 2013) (enjoining arbitration brought against Berthel by claimants who invested in entity solely owned by Berthel's associated person); *Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008) (enjoining arbitration against Herbert where claimants invested in Herbert's bond offerings allegedly based on misrepresentations of Darden (not associated with Herbert) and Drayer (an associated person of Herbert) because claimants did not invest through Drayer or Herbert and Darden was not an agent of Herbert).

Here, as in the cases cited above, Defendants are not customers of the member firm, and they did not purchase securities or services from the member firm. Instead, the Mitchells allege that they invested in Horizon through, and based on the solicitation of, Mooney, who was not associated with Oppenheimer. And, while the Hoppers allege that they invested in Horizon following a "pitch" by Mooney and Woods, as the cases cited above hold, having an attenuated and indirect connection to the FINRA member firm through contact with its associated person does not qualify one as a customer if he or she does not purchase the disputed securities through the firm. The Hoppers never held an Oppenheimer account and never purchased an Oppenheimer security or service. In sum, Defendants are not Oppenheimer customers, even if Woods (an Oppenheimer associated person) allegedly was involved in some respect, or received some benefit from Defendants' investments.

"[T]he court must interpret the FINRA Rules consistent with the reasonable expectations of the FINRA member." *Zimmerman*, 2016 WL 3546537, at *4. "To expand the definition of 'customer' to include individuals with no direct business or investment relationship with a firm,

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 11
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

as the Investors here seek to do, would frustrate the reasonable expectations of FINRA members." *Berthel Fisher & Co. Fin. Servs. v. Larmon*, 2011 WL 3294682, at *5 (D. Minn. Aug. 1, 2011), *aff'd*, 695 F.3d 749 (8th Cir. 2012) (enjoining FINRA arbitration brought by non-customer). "FINRA members would not have joined an organization that would compel them to arbitrate claims from any individual with whom it has even the most remote connection." *Morgan Keegan & Co. v. Louise Silverman Tr.*, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012), *aff'd sub nom.*, 706 F.3d 562 (4th Cir. 2013) (enjoining FINRA arbitration brought by non-customer). The Court should not upset those reasonable expectations by allowing the claims of Defendants—who never had accounts with Oppenheimer, who have no agreements with Oppenheimer, and who never purchased an Oppenheimer security or service—to proceed in the FINRA Arbitration.

Numerous courts, within and without this Circuit, have enjoined FINRA arbitration proceedings where, as here, the parties had not agreed to arbitrate or were not otherwise required to arbitrate the claims at issue. *See, e.g.*, *Raymond James*, 709 F.3d at 388 (affirming entry of permanent injunction against FINRA arbitration where parties had no arbitration agreement and claimants were not customers); *Agarwal*, 23 F.4th at 1085 (affirming entry of preliminary injunction against FINRA arbitration where parties had no arbitration agreement and claimants were not customers); *NYLIFE*, 2020 WL 7075599, at *3 (preliminarily enjoining FINRA arbitration where parties had no agreement to arbitrate and claimant was not customer); *Centaurus*, 2019 WL 2027271, at *6 (same); *LoBue*, 2016 WL 9088704, at *3 (same); *Ashira Consulting, LLC*, 2016 WL 7638177, at *4 (same); *Zimmerman*, 2016 WL 3546537, at *7 (same); *Pershing LLC v. Bevis*, 2014 WL 1818098, at *5 (M.D. La. May 7, 2014), *aff'd*, 606 F. App'x 754 (5th Cir. 2015) (preliminarily enjoining FINRA arbitration where defendants—claimants in the arbitration—were "[w]ithout documentation to demonstrate that Pershing and the Defendants agreed to abirritate their claims or to establish a direct customer relationship between to the two parties"); *Frandino*, 2013 WL 2036655, at *2 (preliminarily enjoining FINRA arbitration where parties had no agreement to arbitrate and claimant was not customer); *Louise Silverman Tr.*, 2012

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 12
Case No. 2:23-cv-00067-TL

WL 113400, at *6 (same); *Morgan Keegan & Co. v. Jindra*, 2011 WL 5869586, at *5 (W.D. Wash. Nov. 22, 2011) (same); *Berthel Fisher*, 2011 WL 3294682, at *5 (same); *OppenheimerFunds Distributor, Inc. v. Liska*, 2011 WL 5984036, at *6 (S.D. Cal. Nov. 28, 2011) (same); *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1037 (W.D. Wash. 2011) (same); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 357 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550 (2d Cir. 2011) (ordering declaratory judgment for FINRA member firm and permanently enjoining FINRA arbitration where parties had no arbitration agreement and claimants were not customers); *Herbert J. Sims*, 548 F. Supp. 2d at 766 (preliminarily enjoining FINRA arbitration where parties had no agreement to arbitrate and claimant was not customer).

As in the cases above, Oppenheimer is not required to arbitrate the claims at issue in the FINRA Arbitration. Oppenheimer had no written arbitration with any Defendant. And no Defendant was ever an Oppenheimer customer. Accordingly, Oppenheimer is likely to prevail on the merits of its claim for a declaratory judgment that it is not required to arbitrate the claims that were or could have been brought by Defendants in the FINRA Arbitration.

## C. Absent An Injunction, Oppenheimer Will Suffer Irreparable Harm.

Without an injunction, Oppenheimer will be forced to spend money and human resources arbitrating claims it never agreed to arbitrate and to achieve an award that would not be enforceable. There is no legal recourse to recover such resources. *See Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997) (resources spent on an arbitration are "not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of . . . the [Federal] Arbitration Act."); *Ashira Consulting, LLC*, 2016 WL 7638177, at *5 (collecting cases holding that "plaintiff would suffer irreparable harm if forced to arbitrate a dispute not subject to arbitration because it would have 'no adequate remedy at law to recover the monetary and human capital it would expend defending itself in arbitration'") (quoting *Herbert J. Sims*, 548 F. Supp. at 766); *World Grp. Sec. v. Tiu*, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003) (enjoining arbitration under rules of NASD (FINRA's predecessor) and noting that, absent

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 13
Case No. 2:23-cv-00067-TL

injunction, harm would be irreparable because resources spent in arbitration are not recoverable under the Federal Arbitration Act). Accordingly, courts consistently hold "that the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is ***per se*** irreparable because it forces an individual to expend resources it cannot later recover." *Zimmerman*, 2016 WL 3546537, at \*6 (emphasis added) (quoting *Louise Silverman Tr.*, 2012 WL 113400, \*5 (collecting cases)); *see also Voegeli*, 684 F. Supp. 2d at 354 ("It is beyond dispute that irreparable harm would result if [plaintiff] were compelled to arbitrate defendants' claims without having agreed to arbitration."). Cases holding the same are legion.[5]

Without an injunction, Oppenheimer would also be "deprive[d] . . . of the opportunity to adjudicate [D]efendants' claims in a court of law," a harm which the courts consider irreparable. *Louise Silverman Tr.*, 2012 WL 113400, at \*5; *see also Voegeli*, 684 F. Supp. 2d at 354; *World Grp.*, 2003 WL 26119461, at \*7 ("[F]orcing Plaintiff to arbitrate would deprive it of its right to choose a forum . . .").

In short, Oppenheimer is not only likely to prevail on the merits of its claims, but also has established that the absence of preliminary relief will give rise to irreparable harm.

## D. The Balance of the Equities Is In Oppenheimer's Favor.

Courts also consistently hold that, in cases like this one, "the harm to Plaintiff clearly outweighs any harm to Defendants." *Ashira Consulting, LLC*, 2016 WL 7638177, at \*6; *see also NYLIFE*, 2020 WL 7075599, at \*4; *LoBue*, 2016 WL 9088704, at \*4; *Zimmerman*, 2016 WL 3546537, at \*6. In such circumstances, on the one hand, the FINRA firm would be "*per se*" irreparably harmed by being forced expend resources to arbitrate a claim it did not agree to

---

[5] *See, e.g.*, *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (affirming grant of preliminary injunction because member firm "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *NYLIFE*, 2020 WL 7075599, at \*3; *LoBue*, 2016 WL 9088704, at \*3; *Ashira Consulting, LLC*, 2016 WL 7638177, at \*5; *Credit Suisse Sec. (USA) LLC v. Sims*, 2013 WL 5530827, at \*3 (S.D. Tex. Oct. 4, 2013); *Monavie, LLC v. Quixtar Inc.*, 741 F. Supp. 2d 1227, 1242 (D. Utah 2009); *Herbert J. Sims*, 548 F. Supp. 2d at 766; *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790, at \*7 (N.D. Cal. July 2, 2007); *Chase v. Manhattan Bank USA, N.A. v. Nat'l Arbitration Counsel, Inc.*, No. 3:04-cv-1205, 2005 WL 1270504, at \*4 (M.D. Fla. May 27, 2005).

arbitrate, without recourse to recover those resources. *Zimmerman*, 2016 WL 3546537, at *6 (quoting *Louise Silverman Tr.*, 2012 WL 113400, at *5); *see supra* at § I.C.  And, "[i]f [Oppenheimer] ultimately prevail[s] on the issue of arbitrability, [defendant] will have lost no 'bargained-for contractual rights to arbitration' because it had none." *NYLIFE*, 2020 WL 7075599, at *4 (quoting *Monavie*, 741 F. Supp. 2d at 1242).

On the other hand, "[i]f [Defendant] ultimately prevails [in demonstrating that it is a customer who may compel arbitration], the preliminary injunction will be dissolved, and [Defendant] may proceed to exercise those rights." *NYLIFE*, 2020 WL 7075599, at *4 (quoting *Monavie*, 741 F. Supp. 2d at 1242); *see also Centaurus*, 2019 WL 2027271, at *5 ("all [the defendant] faces is a delay in the arbitration process if it turns out that the arbitration provision is enforceable.  But the injury [Plaintiff] would face being wrongfully compelled to arbitrate is irreparable."); *Louise Silverman Tr.*, 2012 WL 113400, at *5 (same).

**1.  The Public Interest Is Against Forcing Arbitration of Non-Arbitrable Claims.**

The public interest factor also weighs in favor of the grant of preliminary relief.  "Allowing an arbitration to proceed without an agreement to arbitrate does not serve the public interest." *NYLIFE*, 2020 WL 7075599, at *4; *Ashira Consulting, LLC*, 2016 WL 7638177, at *6. Compelling arbitration in the absence of an agreement to arbitrate offends the bedrock principle that arbitration is "a matter of consent, not coercion." *Volt*, 489 U.S. at 479; *see also Zimmerman*, 2016 WL 3546537, at *6 ("[T]he public interest favors an injunction [where] [d]enying an injunction effectively would force plaintiff to submit to arbitration, a proceeding that . . . defendant has no right or power to compel against plaintiff.").  In addition, all parties and the public have an interest in "preventing an unnecessary use of time and resources on what might ultimately prove to be an unauthorized arbitration." *Louise Silverman Tr.*, 2012 WL 113400, at *6; *Frandino*, 2013 WL 2036655, at *8 ("[D]enial of the preliminary injunction would lead to an expenditure of resources to obtain an arbitration resolution that would ultimately have to be set aside").  Finally,

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 15
Case No. 2:23-cv-00067-TL

forcing arbitration of disputes the parties have not agreed to arbitrate "disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution." *Louise Silverman Tr.*, 2012 WL 113400, at *6; *Ashira Consulting, LLC*, 2016 WL 7638177, at *6 (same).

*   *   *

In sum, application of the four preliminary injunction factors weighs heavily in favor of the grant of preliminary relief here.  Oppenheimer is likely to succeed on the merits of its declaratory judgment claim, having no written agreement with Defendants and no customer relationship with them.  Oppenheimer would suffer irreparable harm by expending unrecoverable resources if it were forced to arbitrate with Defendants.  The equities weigh in Oppenheimer's favor, given the consequences of arbitrating claims that are not required to be arbitrated as compared to the brief delay occasioned by preliminary relief.  And, finally, the public interest is served by the grant of this motion, as all parties should have their right to access to the courthouse protected where they have not agreed to arbitrate claims.

## II.  Oppenheimer Should Not Be Required to Post a Bond.

Federal Rule of Civil Procedure 65(c) generally requires that the party seeking a preliminary injunction post a bond as "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "Rule 65 'invests the district court with discretion as to the amount of security required, if any.'" *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1404 (W.D. Wash. 2019) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)).  The "district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Amazon.com, Inc.*, 417 F. Supp. 3d at 1404 (quoting *Johnson*, 572 F.3d at 1086).

Courts routinely hold that bonds are unnecessary when the injunction at issue involves the question of arbitrability.  As they explain, where "the only potential harm to [Defendant] is a delay in pursuing arbitration while the issue [of whether he is a "customer"] is litigated in federal court,"

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 16
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

a bond is "unnecessary." *Centaurus*, 2019 WL 2027271, at \*6 (enjoining FINRA arbitration and finding no bond required); *see also Maryland Cas. Co.*, 107 F.3d at 985 (district court did not abuse its discretion by not requiring plaintiff to post security for injunction against arbitration); *McPoland*, 829 F. Supp. 2d at 1037 (granting preliminary injunction against FINRA arbitration brought by non-customer and finding no bond necessary); *Jindra*, 2011 WL 5869586, at \*5 (same); *Edward E. Gillen Co. v. Ins. Co. of the State of Pennsylvania*, 747 F. Supp. 2d 1058, 1062 (E.D. Wis. 2010) (enjoining arbitration and finding no bond required where "the only potential harm [to the insurer] is a delay in pursuing arbitration while the [arbitrability] issue is litigated here in federal court.").

Likewise, here, the only theoretical harm to Defendants is a short delay in pursuing their claims in arbitration if they ultimately were to prevail on demonstrating that they were Oppenheimer customers who may compel arbitration of their disputes. *See supra* at § I.D. Accordingly, Oppenheimer respectfully requests that the Court order that Oppenheimer need not post a bond.

## CONCLUSION

For the foregoing reasons, Oppenheimer respectfully requests that the Court issue an order preliminarily enjoining Defendants from pursuing their claims against Oppenheimer in FINRA arbitration. Oppenheimer also requests that the Court order that Oppenheimer need not post a bond as security.

///

///

///

///

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 17
Case No. 2:23-cv-00067-TL

Dated:  January 23, 2023.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Andrew DeCarlow*
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Email: andrew.decarlow@morganlewis.com

Jason D. Frank (*pro hac vice*)
Matthew C. McDonough (*pro hac vice*)
One Federal Street
Boston, MA 02110
Phone: (617) 951-8000
Email: jason.frank@morganlewis.com
            matthew.mcdonough@morganlewis.com

*Counsel for Plaintiff Oppenheimer & Co. Inc.*

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 18
Case No. 2:23-cv-00067-TL

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a true and correct copy of the foregoing document on the following adverse parties and their counsel in the manner indicated:

*Attorneys for Defendants:*
CHAPMANALBIN LLC                                ☐ *Via Legal Messenger*
John S. Chapman                                    ☒ *Via U.S. Mail*
700 W. St. Clair Avenue, Suite 200                 ☐ *Via Facsimile*
Cleveland, OH 44113                                ☒ *Via Email*
Email: jchapman@chapmanlegal.com

*Defendants:*
Steven Michell                                     ☐ *Via Legal Messenger*
Dori Mitchell                                      ☒ *Via U.S. Mail*
5715 Countryside Beach Drive NW                    ☐ *Via Facsimile*
Olympia, WA 98502                                  ☐ *Via Email*

*Defendants:*
Jerome Hopper                                      ☐ *Via Legal Messenger*
Lori Hopper                                        ☒ *Via U.S. Mail*
2125 Beverly Beach Drive NW                        ☐ *Via Facsimile*
Olympia, WA 98502                                  ☐ *Via Email*

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 23rd day of January, 2023 at Seattle, Washington.

*s/ Kelly M. Kennedy*
Kelly M. Kennedy, Legal Assistant

PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION – PAGE 19
Case No. 2:23-cv-00067-TL

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401